```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------X
JUAN FERNANDEZ,
                    Petitioner,      06 Civ. 7174 (WHP)(DFE)
                                     (This is not an ECF case.)
         - against –
                                     REPORT AND RECOMMENDATION
PEOPLE OF THE STATE OF NEW YORK,     TO JUDGE PAULEY

                    Respondent.
---------------------------------X
```

DOUGLAS F. EATON, United States Magistrate Judge.

     Juan Fernandez brings this *pro se* habeas petition to challenge his conviction for Assault in the First Degree, after a May 1999 jury trial before Justice Felice K. Shea in Supreme Court, New York County. Fernandez, born on October 8, 1976, was sentenced, as a second violent felony offender, to a determinate prison term of 12 years.

     This habeas petition was filed in September 2006. On May 24, 2007, Judge Pauley referred it to me for a Report and Recommendation.

     On November 27, 2007, Assistant Attorney General Jennifer L. Johnson filed the trial transcript and a memorandum of law and her declaration annexing Exhibits A through BB.

     Fernandez then asked me for appointed counsel because he was considering whether to return to the state courts on his unexhausted claims. I denied his request in a Memorandum and Order dated January 22, 2008. Next, Fernandez implicitly requested a stay so that he could go to state court with a "newly discovered claim" that his "right to a speedy trial was violated." In a Memorandum and Order dated April 30, 2008, I refused to stay this habeas proceeding.

     On May 8, 2008, I received two affirmations from Fernandez, one in opposition to AAG Johnson's papers, and the second in support of his "motion" for a writ of habeas corpus.

     By letter dated September 9, 2008, Fernandez advised me that he was being released on parole on September 11. I apologize for my delay in preparing this Report, but I gave priority to other habeas petitioners who were still confined to prison. For the reasons set forth below, I recommend that Judge Pauley deny this habeas petition.

**FACTUAL AND PROCEDURAL BACKGROUND**

On March 10, 1998, Durrell Carter, then 17 years old, traveled by subway from Brooklyn to the Port Authority Bus Terminal with several friends, including Andrew McKie and Theresa Sykes.  At trial, the three of them testified as follows (Tr. 276-479).  Until January 1999, Carter was a member of the Bloods, a gang whose color was red; he was wearing a red shirt, red gloves, and a red bandana on March 10, 1998.  At 4:15 p.m., while standing in the Bus Terminal, he was approached from behind by petitioner Fernandez, who was wearing a yellow shirt and black jeans (the colors of the Latin Kings gang).  Using something like a razor or a box cutter,  Fernandez sliced Carter's face from the chin to the back of the jaw line, and then ran up an escalator. Police Officer David Grossbard testified (Tr. 366-95) that he saw Carter and the friends chase and corner Fernandez.  Grossbard and other officers intervened, and Fernandez was arrested.  McKie testified that Fernandez had been holding a yellow-and-black box cutter until the police arrived, and that Fernandez dropped it near McKie, who soon handed it to the officers.  (Tr. 404-07.) Fernandez had a cut on one finger and a red spot on his shirt. Carter received 22 stitches and displayed his 7-inch scar to the jury.

Carter apparently did not testify before the first grand jury.  On March 16, 1998, Fernandez, accompanied by his attorney Steven L. Wershaw, Esq., did testify before the first grand jury. His 4/30/08 affirmation in opposition, at ¶3, says his testimony was "that I was attacked by Durrell Carter while he was in the company of his Blood member friends, and in the ensuing struggle, Carter sustained a *self-inflicted* wound to the neck."  (Emphasis added.)  The first grand jury was obviously unimpressed with Fernandez's testimony; it charged him with Assault in the Second Degree.

As will be seen in more detail, the prosecutor apparently was unable to locate complainant Carter for eight months, until November 18, 1998.  Soon after that, the prosecutor presented Carter's testimony to a second grand jury, which increased the charge against Fernandez to Assault in the First Degree.  Mr. Wershaw served a notice that Fernandez wanted to testify before the second grand jury, but the prosecutor said that this jury was sitting in a building that could not accommodate a defendant who was in custody.  (Exh. O, ¶¶12-15.)

Jury selection began on May 10, 1999.  Still represented by

- 2 -

Mr. Wershaw, Fernandez did not testify at trial.  On May 17, 1999, the jury found him guilty.  On June 3, 1999, he was sentenced, as a second violent felony offender, to a determinate prison term of 12 years.  He filed a notice of appeal, and he was zealously represented by George W. Galgano, Jr. from 2000 through 2005.  In February 2002, Mr. Galgano filed a motion to vacate the conviction pursuant to N.Y. Criminal Procedure Law §440.10.  (Exh. N.)  He annexed an affidavit from Fernandez (also at Exh. N) which said at ¶6:  "While I maintain my innocence, had I been told of the [11/9/98] offer of two to four years, I would have reluctantly pleaded guilty."  The motion was denied in an opinion by Justice John E. H. Stackhouse (Exh. P).

The Appellate Division affirmed the conviction in a detailed opinion. *People v. Fernandez*, 13 A.D.3d 271, 788 N.Y.S.2d 39 (1st Dep't 2004), *aff'd*, 5 N.Y.3d 813, 803 N.Y.S.2d 22 (Ct. App. 2005).  I now quote the Appellate Division's majority opinion in full (with my emphasis in bold font):

> Judgment, Supreme Court, New York County (Felice Shea, J.), rendered June 3, 1999, convicting defendant, after a jury trial, of assault in the first degree, and sentencing him, as a second violent felony offender, to a term of 12 years, affirmed.  Order, same court (John E.H. Stackhouse, J.), entered on or about September 25, 2002, which denied defendant's motion to vacate the judgment of conviction pursuant to CPL 440.10, affirmed.
>
> We reject defendant's contention that he is entitled to a hearing on his claim, advanced by way of a motion to set aside his first-degree assault conviction pursuant to CPL 440.10, that trial counsel represented him ineffectively by failing to communicate a one-day-only plea offer (of which the People have no record) that was allegedly made during "an impromptu brief encounter" between counsel in a stairwell at 100 Centre Street, after that day's calendar call of defendant's case had concluded.  For the reasons discussed below, the very document on which this claim is based - - an affirmation by defendant's trial counsel, Steven L. Wershaw, Esq. (the Wershaw Affirmation) - - establishes, as a matter of law, that defendant cannot establish **\*272** ineffectiveness of counsel based on the failure to convey the alleged plea offer.
>
> Defendant was originally indicted for assault in the second degree in March 1998, based upon evidence

- 3 -

that he slashed another young man's face with a
box cutter, resulting in a cut from chin to ear that
required 22 stitches.  No charge of assault in the first
degree was submitted to the grand jury that returned the
original indictment.  On March 31, 1998, at defendant's
arraignment on the original indictment, the People
indicated, in defendant's presence, that they were
considering re-presenting the case to another grand jury
in order to seek a charge of assault in the
first degree.

There were a number of calendar calls for the
case over the following months.  It appears that
the People were not ready for trial at the calendar
call of November 9, 1998, and the case was then
adjourned to November 18.  At the November 18
calendar call, the People indicated that they were
ready, whereupon the court offered to allow
defendant to plead guilty in contemplation of a
three-year sentence.  Defendant did not, however,
accept the offer.

Subsequently, the People re-presented the case
to a new grand jury, which returned a superseding
indictment charging defendant with assault in the
first degree.  Claiming that his right to testify
before the grand jury had been violated, defendant
moved to dismiss this new indictment.  The motion was
supported by the aforementioned Wershaw Affirmation,
dated February 17, 1999.  In this affirmation,
Wershaw stated, among other things, the following:

> "[O]n November 9, [1998], your affirmant
> by chance bumped into the prosecutor, Mr. Morales,
> in the stairwell at 100 Centre Street, and at this
> impromptu brief encounter, Mr. Morales made an
> 'offer' of '2-4 years,' *which would be available
> only for that day*.  Inasmuch as the case had
> already been adjourned [at the calendar call
> earlier that day] until November 18, and your
> affirmant was running between Parts to cover
> other cases, said 'impromptu offer' was never
> communicated to the defendant."  (Footnote
> omitted; emphasis added.)

The motion to dismiss the superseding indictment
was denied, and, as previously noted, defendant
ultimately was convicted of assault in the first

- 4 -

degree, after which he moved to set aside the conviction pursuant to CPL 440.10.  In support of this motion, defendant argues, among other things, that the above-quoted two-sentence excerpt from the Wershaw Affirmation shows that he was denied effective assistance of counsel by virtue of Wershaw's failure to communicate the one-day-only plea offer allegedly made on November 9.  To prevail on this claim, **\*273** however, defendant must sustain the burden of showing "that he would have been willing to accept the offer" (People v. Rogers, 8 A.D.3d 888, 890-891, 780 N.Y.S.2d 393 [2004]).  Notwithstanding defendant's conclusory assertion that he would have accepted the two-to-four-year offer had he known about it, the fact is that the Wershaw Affirmation itself refutes the notion that defendant was about to accept any such offer on November 9, 1998 (assuming for the moment that the alleged offer actually was made).  The Wershaw Affirmation asserts that, "from April 24 until November 18, 1998, the prosecutor apparently was having trouble locating the complaining witness," and indicates that the expectation was that the case would be dismissed.  In his submissions supporting his CPL 440 motion, **defendant fails to explain why he would have agreed to plead guilty at a time when the People could not even produce a complaining witness, a situation that, if it continued, was likely to lead to dismissal.  Thus, defendant has not raised an issue as to whether he would have accepted the alleged plea offer of November 9**.

That defendant would not have accepted the alleged two-to-four-year plea offer is also demonstrated at another point in the Wershaw Affirmation.  A few lines below the account of the one-day-only offer allegedly made in the stairwell on November 9, 1998, the Wershaw Affirmation provides this information about the proceedings on November 18, 1998, the next date on which there was a calendar call for the case:

> "[T]here was a bench conference discussion regarding a possible plea bargain, and the court suggested to counsel that if the defendant had an 'interest' in pleading guilty to the charge

>       of Assault in the Second Degree, counsel would be
>       given an opportunity to present a sentencing
>       memorandum urging the imposition of the minimum
>       determinate sentence of 3 years.  Immediately
>       following this bench conference discussion, your
>       affirmant went upstairs to the bullpen to
>       conference with the defendant."

Since defendant did not plead guilty to the second-degree assault charge (which, as previously indicated, was later superseded by a new indictment charging first-degree assault), the only possible conclusion to be drawn from Wershaw's account is that defendant rejected the court's three-year plea offer only nine days after the prosecutor allegedly made the two-to-four-year offer.  **The notion that defendant would have accepted the two-to-four-year offer, even though he plainly rejected the three-year offer little more than a week later, strains credulity.**  At a minimum, it was defendant's burden, in his CPL 440.10 motion papers, to come forward with some explanation of why his theory that he would have accepted the two-to-four-year offer, had **\*274** he known about it, is consistent with his actual rejection of the three-year offer.  Since defendant offered no such explanation, he has not raised a triable issue as to whether he would have accepted the alleged offer his counsel failed to convey.

　　Defendant's remaining arguments in support of the appeal from the summary denial of his CPL 440.10 motion are without merit.  Accordingly, the order denying the CPL 440.10 motion is affirmed.

　　Finally, in support of his direct appeal from the judgment of conviction, defendant argues that the trial court improperly precluded him from eliciting testimony concerning the practices and rituals of the victim's gang.  Defendant contended that such testimony would show that the attack may have been perpetrated by one of the victim's fellow gang members.  To the extent defendant raises this point as a constitutional argument, it is unpreserved (see People v. Angelo, 88 N.Y.2d 217, 222, 644 N.Y.S.2d 460, 666 N.E.2d 1333 [1996]).  To the extent defendant is making a claim of nonconstitutional error, we reject it.  Defendant's speculation that the attack was perpetrated by one of the victim's fellow gang members is not supported by

>any evidence in the trial record.  Accordingly, the
>**\*275** trial court properly exercised its discretion in
>precluding such potentially confusing and misleading
>evidence (see People v. Aska, 91 N.Y.2d 979, 981, 674
>N.Y.S.2d 271, 697 N.E.2d 172 [1998]; People v. Johnson,
>6 A.D.3d 226, 774 N.Y.S.2d 532 [2004], lv. denied 3
>N.Y.3d 708, 785 N.Y.S.2d 35, 818 N.E.2d 677 [2004]).

Two justices dissented, on one point only.  They acknowledged that defendant had the burden to show that he would have accepted the plea offer had he known about it.  But they would have "remanded for a hearing at which time testimony could be received regarding the alleged omissions by counsel."  13 A.D.3d at 276, 788 N.Y.S.2d at 43-44.

At this juncture, to maximize the chance for review by the New York Court of Appeals, Mr. Galgano wisely jettisoned his other points.  He wrote to the author of the dissent (Justice John W. Sweeny, Jr.) and requested him to certify one legal question to the Court of Appeals:  "Whether it [was] error for the trial court to summarily deny Mr. Fernandez' ineffective [assistance] claim without first conducting an evidentiary hearing?"  (Exh. W.)  Justice Sweeny granted leave to appeal.  (Exh. Y.)  Letter briefs were then submitted to the Court of Appeals by Mr. Galgano (Exh. Z) and by the District Attorney's Office (Exh. AA).

On September 13, 2005, the seven judges of the Court of Appeals unanimously issued the following memorandum opinion (again, I have added my emphasis in bold font):

>>The order of the Appellate Division, insofar as appealed, should be affirmed.
>>
>>Here, the parties agree that to prevail on his claim that he was denied effective assistance of counsel, defendant had the burden to demonstrate "that a plea offer was made, that defense counsel failed to inform him of that offer, and that he would have been willing to accept the offer" (People v. Rogers, 8 A.D.3d 888, 890-891, 780 N.Y.S.2d 393 (3d Dept. 2004)).  Defendant failed to meet that burden.  Assuming that such an offer was made, defendant proffered nothing to substantiate his claim that he would have accepted the plea.  Defendant's self-serving statement that he would have accepted the plea despite his claimed innocence, without more, is

>insufficient to warrant a hearing in light of the similar plea offer he rejected days before [later] and trial counsel's affirmation that **at the time of the alleged offer he believed the charges would likely be dismissed because the People could not locate a necessary witness**.

(Exh. BB; *People v. Fernandez*, 5 N.Y.3d 813, 803 N.Y.S.2d 22 (Ct. App. 2005) (emphasis added).

## DISCUSSION

Now that Fernandez has filed a federal habeas petition, he must come to grips with "the doubly deferential judicial review that applies to a *Strickland* claim evaluated under the §2254(d)(1) standard." *Knowles v. Mirzayance*, 2009 WL 746274, *8 (U.S. S.Ct. Mar. 24, 2009). The Supreme Court explained the double deference as follows:

>... The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether [it] was unreasonable - - a substantially higher threshold." *Schriro* [*v. Landrigan*, 550 U.S. 465, 473, 127 S.Ct. 1933, 1939 (2007)]. And, because the *Strickland* standard is a **general** standard, a state court has **even more** latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles*, at *8 (with my emphasis in bold font).

In my 1/22/08 Memorandum and Order, I said:

>4. In his reply (due by April 30, 2008), Fernandez should concentrate on the key factual issues that were resolved against him in the decision of the New York Court of Appeals, namely: How can he prove that he would have accepted the alleged plea offer, when (a) he claimed he was innocent, and (b) he rejected a similar plea offer, and (c) he believed that the People would be unable to locate a necessary witness?

Fernandez responds to my ¶4(a) as follows:

>... **The purported innocence claim**: (a)

> Counsel ignored or simply disregarded my
> testimony [in a 2/2/09 affirmation] concerning
> what occurred on March 10, 2008, in that I was
> attacked by Durrell Carter while he was in the
> company of his Blood member friends, and in the
> ensuing struggle, Carter sustained a self-inflicted
> wound to the neck.  See AAG's Exhibit "O", at 17
> - Affidavit ... dated February 2, 1999, at ¶9.

In short, Fernandez still claims that Carter cut himself.  The Court of Appeals acknowledged Fernandez's 3/16/01 post-sentence affidavit (Exh. N) which said:  "While I maintain my innocence, had I been told of the [11/9/98] offer of two to four years, I would have reluctantly pleaded guilty."  But the Court of Appeals held that this, standing by itself, "is insufficient to warrant a hearing" in light of all the other facts.

It is not impossible for a judge to accept a guilty plea from a defendant who maintains his innocence, although many judges would decline to accept such a plea.  In the case at bar, Fernandez's entire pre-trial conduct belies his post-trial claim that he would have pleaded guilty on November 9, 1998.

In responding to my next subparagraph, ¶4(b), Fernandez does not deny that his attorney, upon hearing Justice Shea's 11/18/98 offer of a 3-year plea, immediately conveyed it to him, nor does he claim that he ever asked his attorney to make any sort of a counter-offer.  Instead, he responds to my ¶4(b) as follows:

> **Rejection of Similar Plea Offer**: (b)
> Defense counsel never explained the significance
> of a three year sentencing memorandum.  See AAG's
> Exhibit "Z", at p. 3 ¶ 2&3.  Due to the fact that
> I did not know what my sentencing exposure was
> and had no comprehension of the language used by the
> Court, I could not knowledgeably and intelligently
> accept this proposed sentencing memorandum.  Had
> defense counsel prepared me to understand what was
> being presented by keeping me abreast of all
> developments in my case and by providing these
> disclosures as he received them, [then] I would
> have accepted a plea in light of my criminal record
> .... [A]fter numerous inquiries to counsel and the
> Court, I could not get an answer.

As of 11/18/98, Fernandez was 22 years old.  "[H]e had been convicted, upon his guilty plea, of attempted robbery in the Third Degree on September 14, 1994.  Then, on May 9, 1995, he was

convicted, upon his guilty plea, of Criminal Possession of a Weapon in the Third Degree, for which he received a sentence of two to four years." (Exh. O, ¶4.)  He was savvy enough to realize that Justice Shea's three-year offer was far lower than the sentence he would receive if he went to trial.  He rejected that offer because he wanted to go to trial.  He apparently realized that he would soon be able to post the $5,000 bail, and he apparently believed it was unlikely that a jury would convict on the basis of testimony from members of the Bloods gang.

    Fernandez responds to my ¶4(c) as follows:

> **People would be unable to locate a necessary witness**: (c) ....  The information concerning the People's inability to locate a necessary witness was not known to me until after I gave [1/12/99] notice to the Court that I should not be excluded from critical proceedings ... and [after I] was released on bail in February of 1999. ....

In other words, Fernandez now claims he was unaware until February 1999 that the People had been unable to locate complainant Carter for some seven months ending on November 18, 1998.  But this claim misses the point.  He does not dispute the statement by the Court of Appeals that "at the time of the alleged offer [11/9/98] he [Mr. Wershaw] believed the charges would likely be dismissed because the People could not locate a necessary witness."  (Exh. BB; 5 N.Y.3d 813.)  Fernandez is asking the courts to rule on a hypothetical situation, namely:

> Assume that on 11/9/98 Mr. Wershaw (dropping his other cases) went to the jail and told Fernandez that the prosecutor had just made a plea offer of two to four years, "which would be available only for that day."  (Exh. K, p. 3.)  If so, Fernandez would logically have asked why he was required to respond to the offer immediately.  The attorney would have answered, in words or substance, that the People had been unable to locate complainant Carter for some seven months, that the next court date was 11/18/98, and that, absent an immediate plea, the People would face dismissal unless their efforts to locate Carter could succeed in the next nine days.  On 11/9/98, would Fernandez have agreed to plead guilty?

On that question, the seven judges of the Court of Appeals unanimously answered "no."  Their answer was not unreasonable.

- 10 -

The record presented to them showed as follows.  Nine days after
11/9/98, the People finally located Carter, and Fernandez
rejected Justice Shea's offer of three years.  Three months
later, Fernandez posted the $5,000 bail.  On February 17, 1999,
Mr. Wershaw submitted his affirmation recounting the plea offers
of 11/9/98 and 11/18/99.  (Exh. K, pp. 3-4.)  But his submission
did not ask for any renewal of plea negotiations; instead, he
mentioned the plea offers in support of a motion asserting that
the prosecutor had acted vindictively by obtaining the
superseding indictment, and that the increased charges ought to
be dismissed.  (Exh. K, pp. 4-7.)  This motion was denied by
Justice Shea in a decision dated March 31, 1999.  (Exh. M.)
Fernandez then pressed on to trial.

Hence the Court of Appeals assumed that the prosecutor did make the 11/9/98 plea offer, and assumed that Mr. Wershaw failed to convey it promptly to Fernandez, and yet the Court of Appeals found that Fernandez would not have accepted the plea offer. Therefore, the Court of Appeals rejected the claim that Fernandez was denied the effective assistance of counsel.  In evaluating that state-court ruling, our Court is required to give "the doubly deferential judicial review that applies to a *Strickland* claim evaluated under the §2254(d)(1) standard."  *Knowles*, 2009 WL 746274, *8.  Fernandez has shown no good reason to overturn the decision of the Court of Appeals.  I would note that §2254(d)(1) became law in 1996, and therefore did not apply in *Boria v. Keane*, 83 F.3d 48, *clarified*, 90 F.3d 36, *corrected*, 99 F.3d 492 (2d Cir. 1996); and of course it does not apply to federal prosecutions such as *Cullen v. U.S.*, 194 F.3d 401 (2d Cir. 1999), and *Pham v. U.S.*, 317 F.3d 178 (2d Cir. 2003).

I now turn to the other arguments that are in the habeas petition but were not presented to the highest available state court.

The petition's Ground One copies the first point heading of Mr. Galgano's brief to the Appellate Division, and says:

> Mr. Fernandez was denied his constitutional
> right to effective assistance of counsel as
> evidenced by his trial attorney's failure to
> communicate and explain favorable plea offers,
> file timely motions, secure Mr. Fernandez'
> testimony before the [second] grand jury, and
> object to the introduction of [in]competent
> testimonial and real evidence.

We have already discussed the failure to communicate the 11/9/98

plea offer. The other complaints were discussed at pages 8-15 and 22-24 of Mr. Galgano's brief (Exh. T), and the Appellate Division wrote simply: "Defendant's remaining arguments in support of the appeal from the summary denial of his CPL 440.10 motion are without merit." (Exh. V, p. 7.) Mr. Galgano wisely chose not to present those arguments to the Court of Appeals, and therefore they do not meet the exhaustion requirement of §2254(b) and (c). In any event, those arguments lack merit, as I shall now show.

Mr. Wershaw complained to Justice Shea that the prosecutor's second presentation to a grand jury was held in 80 Centre Street, which apparently lacked security to accommodate an incarcerated defendant who wanted to testify. Fernandez "was produced on the 12th floor bridge at 100 Centre Street, [but] the Grand Jury clerk would not allow an incarcerated defendant to appear before this Grand Jury at 80 Centre Street." (Exh. K, p. 5.) Justice Shea ruled that this did not establish a due process violation, because the right of a defendant to testify before the grand jury was a right created solely by state statute. (Exh. M, p. 4.) On appeal, Mr. Galgano cited this as an example of ineffective performance by Mr. Wershaw "in that he failed to facilitate compliance with Mr. Fernandez' request to testify before the second convening grand jury." (Exh. T, p. 22.) It was entirely reasonable for the Appellate Division to rule that such arguments "are without merit." Moreover, citing *United States v. Mechanik*, 475 U.S. 66, 70, 106 S.Ct. 938, 941-42 (1986), the Second Circuit has ruled that "federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, [and] similar claims concerning a state grand jury proceeding are *a fortiori* foreclosed in a collateral attack brought in a federal court." *Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989).

Mr. Galgano also complained about two other minor matters. Mr. Wershaw failed to object when Carter testified that his friend Melissa exclaimed: "Durrell, do you know that guy? He just cut you!" (Tr. 288.) Her comment carried no significant prejudice, and it was admissible as an excited utterance, made "immediately after a startling event. *People v. Edwards*, 47 N.Y.2d 493, 497 (Ct. App. 1979). Mr. Wershaw failed to object to the receipt of the box cutter, but it is quite likely that an objection would have led to more detailed evidence showing the chain of custody. Moreover, there was no claim that the box cutter carried any fingerprint or DNA.

To summarize, it was entirely reasonable for the state courts to conclude, on the existing record with no evidentiary hearing, that Fernandez was not deprived of his right to

effective counsel.

Ground Two of the habeas petition states:

> Trial court improperly denied defense counsel's request to call a member of the Bloods gang to testify about general gang rituals and practices. Thus, the petitioner was denied the right to introduce evidence that another person committed the crime for which he stands convicted of.

This argument was the second and last point of Mr. Galgano's brief to the Appellate Division (Exh. T, pp. 25-26.)  During the trial, Mr. Wershaw proposed calling a prisoner named Richard Michael Robinson, also known as Ricardo Michael, to testify about the initiation rites of the Bloods gang.  (Tr. 341-55, 482-94.)  The purpose was to buttress a far-fetched theory that Carter's fellow Bloods had chosen the bus terminal concourse, at 4:15 p.m., to slice his face as a gang ritual.  At Tr. 485, Justice Shea said:  "There is absolutely nothing in the record so far that would justify that argument unless you can tell me that Mr. Richard Michaels is going to tell me it's an initiation rite. ... You can talk to him and ask him if this was part of an initiation rite."  This potential witness was subsequently brought to the courthouse (see Tr. 510, just before the lunch recess).  At Tr. 513, both Mr. Wershaw and the prosecutor confirmed that they had "interviewed Ricardo Michael and that neither one of you wishes to call him."  Accordingly, it seems to me that Justice Shea did not preclude calling the witness.  In any event, assuming that she did, it was not unreasonable for the Appellate Division to rule:  "Defendant's speculation that the attack was perpetrated by one of the victim's fellow gang members is not supported by any evidence in the trial record.  Accordingly, the trial court properly exercised its discretion in precluding such potentially confusing and misleading evidence ...."  13 A.D.3d at 274-75, 788 N.Y.S. at 42.  Moreover, Mr. Galgano chose not to present this point to the Court of Appeals.

Lastly, Ground Three of the habeas petition states:

> Petitioner's guilt of first degree assault was not proved beyond a reasonable doubt.  The People failed to establish ... that petitioner "intended to cause serious physical injury to another person," and caused such injury by means of a deadly weapon or dangerous instrument.

Mr. Galgano did not present this claim to the Appellate

Division or the Court of Appeals. In any event, this claim has no merit. Even on a direct appeal, such a claim would require Fernandez to show that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 323-24 (1979). Yet his jury had eyewitness evidence that he grabbed Carter's chin with his right hand and used his left hand to slice Carter's face from the chin to the jaw line with a razor or a box cutter. (Tr. 464-65.)

<u>CONCLUSION AND RECOMMENDATION</u>

For the reasons set forth above, I recommend that Judge Pauley deny Fernandez's petition.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, any party may object to this recommendation within 10 business days after being served with a copy (i.e., **no later than April 14, 2009**), by mailing written objections to the Pro Se Clerk of the U.S. District Court and mailing copies (a) to the opposing party, (b) to the Honorable William H. Pauley, III, U.S.D.J., at Room 2210, 500 Pearl Street, New York, NY 10007 and (c) to me at Room 1360, 500 Pearl Street, New York, NY 10007. Failure to file objections within 10 business days will preclude appellate review. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), and 6(d). Any request for an extension of time must be addressed to Judge Pauley.

_____
DOUGLAS F. EATON
U.S. Magistrate Judge

Dated:   New York, New York
         March 26, 2009

Copies of this Report and Recommendation are being mailed on this date to:

Juan Fernandez
35-28 99th Street, Apt. 3-C
Corona, NY 11368

Jennifer L. Johnson, Esq.
Assistant Attorney General

- 14 -

State of New York
120 Broadway
New York, NY 10271-0332

Hon. William H. Pauley, III